NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GREGORY DEAN, *Appellant.*

No. 1 CA-CR 18-0608
FILED 3-19-2019

Appeal from the Superior Court in Maricopa County
No. CR2017-147951-003
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Joseph T. Maziarz, Phoenix
By Arizona Attorney General Office's
*Counsel for Appellee*

Paul J. Prato, Phoenix
By Maricopa County Public Defender's Office
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**         Gregory Dean appeals his conviction of three counts of aggravated assault, one count of shoplifting, and one count of resisting arrest and the resulting sentences. Dean's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, he found no arguable question of law that was not frivolous. Dean was given the opportunity to file a supplemental brief but did not do so. Counsel asks this court to search the record for arguable issues. *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). After reviewing the record, we affirm Dean's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         On October 17, 2017, Dean and his girlfriend went to a Walmart in Phoenix. A Walmart loss prevention associate testified store surveillance video showed Dean leaving the store without paying for his beer. The employee testified Dean took the beer to a self-checkout machine, pretended to scan the beer, placed it in a shopping bag, and walked out of the store without paying.

**¶3**         Officer Alireza Davarzan was working off-duty at Walmart that night. Davarzan approached Dean in the store parking lot after Walmart employees told him that Dean was suspected of shoplifting. Davarzan told Dean he was a police officer investigating a shoplifting incident and that Dean needed to accompany him to the store's loss prevention office. Dean refused, and Davarzan tried to grab his arm. Dean pulled away from the officer and hit the officer in the face with the beer bottle, which was still inside the shopping bag. The State also presented store surveillance video appearing to show Dean hitting Davarzan with the bag.

**¶4**         Dean then ran from the parking lot into a nearby amusement park. Davarzan followed Dean into the amusement park, eventually caught

up to him, and attempted to handcuff him. Dean struggled with Davarzan and the officer was unable to handcuff him. Eventually, another officer arrived, and Dean was handcuffed and arrested.

¶5            After Davarzan followed Dean into the amusement park, Officers Zachary Alex and Jeffrey Fisher separately responded to the incident. By the time Fisher and Alex arrived, Dean was in handcuffs but not in a patrol car. Dean refused to comply with officers' requests to stand up, and eventually Alex and other officers carried Dean to a police Tahoe and placed him inside the car. They subsequently took Dean out of the car so that the fire department could check his vitals. After the fire department examined Dean, he again refused officers' requests to walk back to the patrol car. Alex, Fisher, and a third officer picked Dean up and tried to place him back inside the car. As Alex and Fisher were placing Dean into the car, Dean kicked both officers. He then head-butted Alex in the chest. Alex reacted and punched Dean in the face. The officers were then able to get Dean fully inside the car and he was taken to the police station

¶6            The State charged Dean with one count of aggravated assault, a class 2 dangerous felony, relating to Dean's conduct toward Davarzan ("Count One"); two counts of aggravated assault, a class 5 felony, relating to Dean's conduct against Fisher and Alex ("Count Two" and "Count Three"); one count of shoplifting, a class 1 misdemeanor ("Count Four"); and one count of resisting arrest, a class 6 felony, again relating to Dean's conduct toward Davarzan ("Count Five").

¶7            A six-day trial was held. Davarzan, Fisher, Alex, two additional officers who responded, and the Walmart loss prevention associate testified for the State. At the close of the State's case, Dean moved for a judgment of acquittal, which the court denied. Dean's girlfriend testified for the defense and stated she went to Walmart that evening with Dean and witnessed the officers' interactions with Dean outside the amusement park. She testified Dean walked peacefully with the officers out of the amusement park but that after the fire department evaluated Dean, officers pinned him down and put a zip tie around his ankles. She testified the officers then picked Dean up, carried him to the police car, and "threw him on the floor [and] [l]iterally he fell between the passenger seat and the backseat." Dean did not present any other witnesses or testimony.

¶8            During closing arguments, Dean moved to strike Juror Number 12 after another juror told the court Juror Number 12 commented on the evidence before deliberations began. The court questioned each juror on the issue. Most jurors denied hearing any comments by another juror

about the evidence, but every juror told the court he or she could be fair and impartial even if they had heard a comment. The court declined to release Juror Number 12. Ultimately Juror Number 12 was chosen as an alternate and did not deliberate in this case.

**¶9**        The jury convicted Dean on all counts. For Count One, the jury also found the State proved beyond a reasonable doubt that Davarzan was a peace officer engaged in official duties. After trial but before sentencing, a juror left a voicemail with the superior court claiming other jurors made "stipulations about black males in general." In response, Dean moved for an extension of time to file a motion for new trial to investigate the claim of juror misconduct. The superior court deemed the motion a timely motion for a new trial, and ordered Dean to file additional briefing "regarding the issue of juror misconduct, if any." The deadline for filing additional briefing passed without Dean filing any further briefing, and we presume the court denied the motion. *See State v. Paris-Sheldon*, 214 Ariz. 500, 507, ¶ 22 (App. 2007). Dean did not raise the issue on appeal, and we note that any claims of ineffective assistance of counsel may be raised in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32.1. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

**¶10**        At sentencing, Dean admitted to one prior historical felony conviction. The superior court sentenced Dean to presumptive, concurrent terms of 10.5 years' imprisonment on Count One, 2.25 years' imprisonment on Counts Two and Three, 302 days' imprisonment on Count Four, and 1.75 years' imprisonment on Count 5. In addition to other fees and assessments, the court ordered Dean to pay restitution in the amount of $2.58 for the shoplifting charge. The court awarded Dean 302 days' presentence incarceration credit. He timely appealed.

## DISCUSSION

**¶11**        We have read and considered counsel's brief and have reviewed the record for any arguable issues. *See Leon*, 104 Ariz. at 300. We find none.

**¶12**        Dean was present and represented by counsel at all stages of the proceedings against him. The record reflects the superior court afforded Dean all his constitutional and statutory rights, and the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court held appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's verdicts.

Dean's sentences fall within the range prescribed by law, with proper credit given for presentence incarceration.

**CONCLUSION**

**¶13**      Dean's convictions and sentences are affirmed. After the filing of this decision, defense counsel's obligations pertaining to Dean's representation in this appeal will end after informing Dean of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).



AMY M. WOOD • Clerk of the Court
FILED: AA